UNITED STATES of America, Plaintiff,

v.

**Excel WARREN, Jr., Defendant.**

**No. LR–CR–95–248.**

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 20, 1998.

Nunc Pro Tunc Aug. 14, 1998.

Paula Casey, U.S. Attorney by Jana K. Harris, Assistant U.S. Attorney, Little Rock, AR, for Plaintiff.

William C. McArthur, McArthur Law Firm, Little Rock, AR, for Defendant.

### *SENTENCING OPINION and STATEMENT OF REASONS*

GEORGE HOWARD, Jr. District Judge.

Defendant, Excel Warren, was charged in a two count indictment with (1) conspiring with others to distribute and possess with the intent to distribute cocaine and (2) knowingly and intentionally attempting to possess with the intent to distribute approximately 1/4 kilogram of cocaine. On October 22, 1996,

Warren was convicted of both counts following a jury trial.[1]

### RELEVANT FACTS

Relative to Count One of the indictment, the Government asserts that the conspiracy to distribute and possess with the intent to distribute cocaine occurred between on or about January 1, 1990, and June 1, 1993; and that Count Two, regarding the attempt to possess with intent to distribute approximately 1/4 kilogram of cocaine, occurred on or about April 2, 1993.

In support of its case, the Government offered the following evidence through the following key witnesses:

(1) Ronald Watson, identified by a confidential informant working for the Drug Enforcement Administration as a major distributor of kilograms of cocaine in the Little Rock, Arkansas area, and whose brother, Richard Talley who testified on behalf of defendant, testified that Ronald Watson has been in the drug business since 1971, testified that he sold defendant cocaine on at least three occasions between early 1990 and early 1992; that during the initial transaction, he delivered four ounces of cocaine to defendant on a "consignment" or front basis, but defendant returned two ounces; that in 1991, he sold defendant a kilogram of cocaine; that in early 1992, he sold defendant another kilogram of cocaine; and that he acquired his cocaine from Keith Williams who imported drugs to Arkansas from California.

Ronald Watson testified further that at the direction of Sergeant Don Sanders, an Arkansas State Police Investigator assigned to the Drug Enforcement Administration in Little Rock Arkansas, he invited defendant to his home in April, 1993, where a video camera had been installed, and asked Warren to sell him a quarter of kilo of cocaine. Sergeant Sanders supplied Watson with $6,500.00 cash to pay for the cocaine with instructions to deliver the money only upon actual delivery of the cocaine. When defendant appeared, defendant did not have any drugs, but tried, without success, to persuade Ronald Watson to deliver the $6,500.00 to defendant in exchange for defendant's promise to return within a reasonable period of time with the drugs.[2]

(2) Kenneth Piggee testified that in November, 1990, he made a trip to Houston, Texas, to purchase cocaine for Excel Warren; that while returning to Arkansas, he was stopped by a Texas Highway Patrolman for improper license tags and while being interviewed by the officer, 2,009.34 grams of cocaine was discovered on the rear seat of the vehicle. On cross examination Piggee could not recall whether he contacted defendant or defendant contacted him about making the trip to Houston to purchase cocaine. Piggee further admitted that he gave the Texas officers false information about the identity of his wife and his home address and that he could not remember whether he either told the Texas officers or the Grand Jury that a person by name of Tina Gay gave him the telephone number to call upon arriving in Houston in order to communicate with the

---

1. Warren's initial trial, which commenced on August 7, 1996, resulted in a mistrial on August 9, 1996, because the jury could not reach a unanimous verdict.

Following his conviction on October 22, 1996, Warren, among other things, moved for a new trial which was granted by the Court. See: *United States v. Warren*, 971 F.Supp. 1288 (E.D.Ark.1997). The Government appealed the decision which was reversed by the Eighth Circuit Court of Appeals on March 26, 1998, and the case was remanded for sentencing. See: *United States v. Warren*, 140 F.3d 742 (8th Cir.1998).

2. Defendant in testifying in his own behalf testified as follows regarding the April 2, 1993, visit to Ronald Watson's home:

A. So when Ronnie approached me and asked me would you get me some narcotics my idea was Hey, look, this is probably the only chance I'll ever have to collect my money from this guy. What I did, when he told me that, I said if I can get my hand on this money, you'll catch hell getting it back, and I was just so—he had messed up my (sic) with Mr. Phillips as far as the I take of business. He's almost bankrupt my insurance company, he's just done everything he could, and that's the only way I feel I could get my hands on any of that money back.

drug source. In response to a question posed by defense counsel as to the purpose of giving false information about his address and his wife's name, Piggee replied, "Everybody lies."

(3) Michael L. Smith, a supervisory special agent of the F.B.I., testified that a wire tap was placed on two telephones, a cellular mobile phone and a phone in an apartment, in the name of Keith Williams also know as Keith Walker who was trafficking in cocaine in Little Rock. The taps were installed on March 1, 1993, and discontinued on May 13, 1993; that during this period, thousands of telephone calls were recorded; that two calls have been identified as calls associated with defendant; that the first call involved a conversation between defendant and Eric Childress who was a runner for Keith Williams and Keith Williams; that the second call was a conversation between the runner Childress and defendant.

On cross examination, Special Agent Smith testified as follows:

Q. In your review of some of these tapes did you get the indication that Mr. Williams was both buying insurance or had bought insurance from Excel Warren (defendant) and also was talking about renting a house leasing a house?

A. Yes, it's clear that some of the conversations, or a portion of some of the conversations, had to do with Mr. Williams attempting to locate a residence. . . .

. . .

Q. Would you not agree that previous reviews didn't indicate any (calls from Excel Warren to the cell phone)? They were all calls between the home phone and the office number?

A. I believe that's going to be correct. . . .

(4) Eric Childress testified that he began working for Keith Williams in the fall of 1989 and that his job consisted of bringing cocaine to Little Rock from Los Angles and then returning to Los Angeles with the money; that he was led to believe by Keith Williams that defendant was a cocaine customer of Keith Williams; that he first met defendant when "we went to his office to purchase some insurance for a load vehicle" which is used to transport cocaine; that the only dealing he had with defendant was in 1992 when defendant came to Keith Williams' apartment and left $3,000.00;[3] that Keith Williams had advised him that defendant would come to the apartment, during his absence, "to drop something off and pick something up;" and that the "something was cocaine—one or two keys," but he never delivered any drugs to defendant.

On cross examination, Childress stated that he never delivered cocaine to defendant and never saw him pick up anything at Keith Williams' apartment; that at the time, defendant extended insurance coverage on vehicles for Keith Williams; and that these vehicles were new and converted to cocaine haulers later on.

(5) Larry McNeill testified that he started working for Keith Williams as a driver in 1992; that he would take money from Arkansas to California and return with drugs; that he first met defendant in May, 1992 when Warren visited the apartment of Keith Williams; that defendant delivered a bag that contained money; that after defendant left, he immediately made preparations to leave for California, since this was the last sum of money to be reported before his departure; that the money was in payment of drugs delivered earlier and that the amount delivered was approximately $25,000.00 to $30,000.00.

On cross examination, McNeill admitted that in cooperating with and assisting the Government in the ongoing drug investigation that he had never mentioned defendant or implicated defendant until "about two months ago;" and that in exchange for

---

**3.** Defendant testified that he never purchased drugs from Keith Williams and that their relationship involved insurance coverage on approximately six vehicles owned by Williams; that the telephone calls that were taped related to a house defendant was trying to sell Williams; and the $1,500.00 that he delivered to Williams' apartment was a deposit that Williams had made for the leasing of a house which was never consummated.

his testimony in this proceeding, the Government would write a letter in his behalf recommending a reduction in a sentence previously imposed in a Virginia case.[4]

(6) Sergeant Don Sanders, an Arkansas State Police Investigator assigned to the Drug Enforcement Administration, testified as follows on cross examination:

Q. To your knowledge was Excel Warren (defendant) ever found in possession of any amount of drugs?

A. Not that I'm aware of.

Q. Or was he ever found in possession of large sums of money?

A. Not that I'm aware of.

### THE GUIDELINES

The Presentence Report prepared by the United States Probation Office grades defendant's offense conduct under the United States Sentencing Guidelines at a total offense level of 32 [5] and assigns defendant a Guidelines criminal history category of III. The Sentencing Table provides for an imprisonment range of 151 to 188 months. The Guidelines also provide for a term of supervised release of not less than four years and not more than five years relative to Count One and not more than three years as to Count Two. Relative to the imposition of a fine, the Guidelines provide for a range of $17,500.00 to $4,000,000.00 as to Count One and not more than $1,000,000.00 as to Count Two.

### DEFENDANT'S OBJECTIONS

■ Defendant objects to Paragraph 12 of the Presentence Report that assigns a 1 kilogram of cocaine in establishing defendant's base offense level based on the amount of controlled substance involved in the offense by using Larry Wayne McNeill's testimony to the effect that McNeill saw defendant deliver between $25,000.00 and $30,000.00 to Keith Williams for cocaine.

The Court is persuaded that defendant's objection has merit. This quantity of 1 kilogram is, indeed, based on speculation and conjecture. McNeill offered no statement or testimony to serve as basis to determine the quantity of the drugs allegedly involved in order to avoid speculation.

■ In addition, the Court finds that the 1/4 kilogram and 2 ounces of cocaine during the April 1993 negotiation at Ronald Watson's home included in the quantity of cocaine in determining defendant's offense level should be deleted because defendant has established that he did not intend to provide or sell any cocaine to Watson. Moreover, the Court further finds that defendant has also established that he was not reasonably capable of providing any cocaine. The Court bases the above determination on the following:

Ronald Watson testified that at the request of Sergeant Sanders, Watson invited defendant to his home where a video camera had been installed and that Sergeant Sanders had supplied Watson with $6,500.00 to purchase drugs from defendant. Watson sought to negotiate the purchase of cocaine. Defendant testified that he never intended to supply any drugs and that defendant's action in seeking to persuade Watson to deliver the $6,500.00 to defendant on defendant's promise to deliver drugs in the future was simply a ploy or tactic to gain possession of the $6,500.00 for the purpose of reimbursing himself for an indebtedness that Watson owed, but refused to honor. There is evidence in the record that defendant sought the assistance of the prosecuting attorney of Pulaski County, Arkansas, in pressing criminal action against Watson for Watson's action in taking assets that belonged to defendant. These circumstances occurred before the circumstances developed in this proceeding.

---

4. In response to Larry McNeill's testimony, defendant stated the following:

A. I've never seen that guy in my life.

Defendant further testified that he has never "physically possessed" $24,000.00 or $35,000.00 in cash nor paid that much money to "anybody for anything."

5. Counts One and Two are grouped under U.S.S.G. Section 3D1.2(d) as the offense level is determined largely on the basis of the quantity of substance involved. Accordingly, there is one count group and one offense level.

Thus, with the combined reduction of 1.25 kilograms and 2 ounces in the quantity of cocaine, the offense level is decreased to Level 30.

## OFFENSE ADJUSTMENT

 The assigned offense level does not take into account any offense adjustment under Section 3B1.2(a) or (b) of the Guidelines, which provides for a four level decrease if the defendant was a minimal participant in the criminal activity in question, a 2 level decrease if the defendant was a minor participant, and in cases falling between (a) and (b), decrease by 3 levels.

This Court, after carefully reviewing the evidence in this proceeding, is of the view that defendant's role in the activity in question is substantially less culpable than his alleged co-conspirators' roles as leaders and organizers of the activities. There is no evidence that defendant was ever aware of the full profit and the amount of the cocaine involved in the entire conspiracy nor the extent and scope of the conspiracy. Defendant had no prior history of involvement with drugs. No specific role in the conspiracy was alleged or suggested in the charges or the evidence.

The undisputed evidence discloses that Ronald Watson, the Government's key witness, has been involved in drug activities since 1971. Sergeant Sanders testified that during the time frame of an ongoing investigation that focused on defendant, he is not aware that defendant was ever found in possession of any amount of drugs or in possession of large sums of money. The undisputed evidence also reflects Keith Williams' activities extended from Arkansas to California over an extended period of time. Kenneth Piggee who was apprehended by Texas authorities with a quantity of cocaine could not recall whether he contacted defendant or defendant contacted him about making the trip to Texas to purchase drugs, but conceded that he deliberately lied to the Texas authorities regarding his address and wife's name. Piggee also testified that he received information from one Tina Gay on how to communicate with the drug source in Houston, Texas.

Accordingly, the Court is persuaded that a 3 level adjustment in the offense level is appropriate inasmuch as the Court finds that defendant's role falls between (a) and (b) of Section 3B1.2. This adjustment gives defendant a total offense level of 27.

The aforementioned adjustments give defendant a total offense level of 27 and a criminal history category of III, therefore, the Guideline sentencing range is 87 to 108 months.